## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMETRIUS COLEMAN, <br><br> *Plaintiff*, <br><br> v. <br><br> 26 MOTORS CORP.; and JPMORGAN CHASE BANK, N.A., <br><br> *Defendants*. | Civil Action No.: 21-cv-10537 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Demetrius Coleman, Plaintiff herein, by his attorneys, alleges and complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Demetrius Coleman ("Plaintiff" or "Mr. Coleman"), an individual consumer, brings this action for monetary damages, injunctive relief, and declaratory judgment, seeking redress for unlawful practices relating to their purchase and financing of an automobile.

2.      Plaintiff is the victim of predatory auto advertising, financing and sales practices.

3.      Specifically, Plaintiff was lured into the dealership of 26 Motors Corp. by means of an online advertisement showing a sales price of $37,950 for a vehicle and was then – through a variety of sharp and deceptive practices, including undisclosed fees, unwanted warranties, failure to fully credit his down payment, and clever manipulation of a digital signature pad – conned into paying more than the agreed-upon, advertised price for a different vehicle.

4.      Plaintiff seeks injunctive relief, declaratory relief, and actual, statutory, treble, and punitive damages against Defendants for, *inter alia*, violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") and its implementing regulations, 12 C.F.R. §§ 1026 *et seq.*

("Regulation Z"), the New York Motor Vehicle Retail Installment Sales Act, N.Y.P.P.L. § 301 *et seq.* ("MVRISA"), New York General Business Law § 349 and § 350, and for common-law fraud.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 15 U.S.C. § 1640 (TILA).

6.      This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, the Dealership resides in this District, and JP Morgan Chase Bank regularly does business in this District.

## THE PARTIES

9.      Plaintiff Demetrius Coleman is a natural person and citizen of New York residing in Syracuse, New York.

10.     Mr. Coleman is a "consumer," as defined in 15 U.S.C § 1692a(3).

11.     26 Motors Corp (the "Dealership") is an automobile dealership located in Bronx, New York, and has been at all times relevant to this matter a dealership engaged in the business of purchasing and selling motor vehicles in the State of New York.

12.     The Dealership is a domestic corporation registered with the New York Secretary of State.

13.     The Dealership was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

14.     JP Morgan Chase is a division of a national banking association.

15.     JP Morgan Chase is a citizen of the State of New York, is authorized to do business in the State of New York, and transacts business in the State of New York.

16.     JP Morgan Chase provides automobile loans and loan servicing nationwide, including in the state of New York.

17.     JP Morgan Chase is, upon information and belief, assignee of Plaintiff's contracts with the Dealership.

18.     To the extent Defendant JP Morgan Chase is not liable in its own right, JP Morgan Chase is liable as an assignee (*e.g.* pursuant to 16 CFR § 433.2, N.Y. Pers. Prop. Law § 302.9(a), the Retail Installment Contract ("RIC") between Plaintiff and the Dealership, and other applicable law) and/or based on agency principles.

## FACTUAL ALLEGATIONS

19.     In early June, 2021, Plaintiff saw an advertisement on the Dealership's website for a blue 2020 Dodge Durango for $37,950.

20.     On around June 18, 2021, Plaintiff went to the Dealership to purchase the blue 2020 Dodge Durango for which he had seen the advertisement.

21.     At that time, the sales representative informed Plaintiff that there was a problem with the stereo of the blue 2020 Dodge Durango and offered him a white 2020 Dodge Durango for the same price.

22.     Plaintiff agreed to purchase the white 2020 Dodge Durango for the same advertised price—$37,950—as the blue 2020 Dodge Durango.

23.     The sales representative said that Plaintiff was approved for financing by Chase, but he required $12,000 as a down payment.

24.     Plaintiff agreed to a down payment of $12,000.

25.     After processing the payment, the sales representative then presented Plaintiff with a price including taxes and warranty of $48,593.

26.     Believing that this amount would then be reduced by his down payment of $12,000, Plaintiff agreed to the price of $48,593.

27.     The sales representative then gave Plaintiff a blank electronic signature pad to sign without showing him the RIC or the terms of the agreement.

28.     Plaintiff signed the blank electronic signature pad once.

29.     Discovery will show that the Dealership took that single signature and affixed it electronically to several sections of the RIC that were not revealed to Plaintiff.

30.     The Dealership therefore failed to provide to Plaintiff all of the details of the Vehicle purchase, including the financing terms.

31.     The deal also included a $3,000 service contract Plaintiff did not know he was purchasing, and to which the Dealership affixed Plaintiff's signature without his knowledge or consent.

32.     Plaintiff signed the electronic signature pad upon belief that the total cost of the vehicle was $48,593, and that this amount would be lowered by his $12,000 down payment.

33.     The RIC was given to the Plaintiff, folded and in an envelope, on his way out of the Dealership with the Vehicle.

34.     On or about June 19 or 20, 2021, a day or two after receiving the Vehicle, Plaintiff saw that the RIC was not what he was led to believe.

35.     The price of the vehicle as stated on the RIC was $69,109.68, that is, $20,516.68 more than what the Dealership led Plaintiff to believe and stated in its advertisement.

36.     Plaintiff called the Dealership and attempted to correct the error but was unsuccessful.

37.     Plaintiff went to the Dealership and was told that they could not return the vehicle.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Violations of TILA, 15 U.S.C. §§ 1601–1667(f)

38.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

39.     Plaintiff's transaction as described herein was a consumer credit transaction within the meaning of the TILA, 15 U.S.C. §§ 1601–1667f, and Regulation Z, 12 C.F.R. part 226.

40.     The Dealership regularly extends or offers to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

41.     The loan agreement provides on its face that the underlying debt is payable to the Dealership.

42.     The Dealership is a "creditor" within the meaning of TILA and Regulation Z. *See* 15 U.S.C. § 1602(g)(1).

43.     The loan agreement lists a motor vehicle, an article of personal property, as collateral.

44.     Plaintiff is a natural person, and the purchased the Vehicle for personal, family, or household purposes. Plaintiff therefore is a "consumer" for purposes of entitlement to all disclosures required by TILA and with regard to entitlement to the Act's protections. *See* 15 U.S.C. § 1602(i) (specifying attributes of a consumer credit transaction).

45.     The loan agreement is a written agreement payable in more than four installments.

46.     The finance charges as indicated in the loan agreement, as incorporated into the RIC, exceed $1,000.00.

47.     The loan agreement is a contract in which Baron Cohen, as a creditor, commits to sell a natural person property primarily for personal, family, or household purposes, in which the total amount financed is less than $50,000. Consequently, the Loan Agreement constitutes a non-exempt "credit sale" for purposes of 15 U.S.C. §§ 1602(h) and 1603(3).

48.     The loan agreement is inconsistent with the advertisement for the Vehicle as well as the oral disclosures made by the Dealership's agent on the date of the transaction.

49.     Defendants failed to provide Plaintiffs with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z, *e.g.*, 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, *e.g.*, 12 C.F.R. § 226.17(a)(1).

50.     Had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the Vehicle on the terms and conditions imposed on them by the Defendant and instead would have sought to purchase a vehicle without the unwanted and unnecessary warranties and additional charges imposed on them by the Defendant.

51.     Had Defendant provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would have sought and obtained alternate, lower cost financing.

52.     In addition, the RIC materially misstates the amount financed, as it includes the extended warranty Plaintiff did not agree to purchase, which then causes a misstatement of the total amount of the payments in the disclosure.

53.    The loan agreement also materially misstates the total amount of the transaction, as it is nearly more than $30,000 more than the advertised price of the Vehicle and the price to which Plaintiff agreed.

54.    Each of these various overcharges (including but not limited to the service plan overcharge, the failure to credit the Plaintiff's down payment and the increase of the Vehicle's price from the orally disclosed price to the final price) would not have been charged to a comparable cash buyer and were charged incident to the extension of credit.

55.    Accordingly, each and every one of these overcharges constitute an undisclosed finance charge, rendering the sale price, finance charge, amount financed, and APR materially misstated, in violation of TILA and Regulation Z, *e.g.*, § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

56.    For all these reasons, the Dealership is liable under TILA and Regulation Z for statutory damages, actual damages, attorneys' fees, litigation expenses and costs, along with a declaratory judgment that it has violated TILA and Regulation Z.

57.    By extension, JP Morgan Chase is liable for these same violations, as the eventual holder of the finance agreement the Dealership entered into without Plaintiff's consent.

58.    As a result of these TILA violations, Plaintiff is entitled to actual damages, statutory damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### Violations of MVRISA, N.Y. PERS. PROP. LAW §§ 301–16

59.    Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

60.    Plaintiffs are "retail buyers" within the meaning of MVRISA § 301(2).

61.    The Dealership is a "retailer seller" within the meaning of MVRISA § 301(3).

62.     The transaction as described herein involved a "retail instalment sale" within the meaning of MVRISA § 301(4).

63.     As set forth above, Plaintiff was not provided with clear and conspicuous loan disclosures.

64.     In addition, to the extent disclosed, the relevant loan terms were materially misstated.

65.     Pursuant to § 302(5), MVRISA incorporates all TILA disclosure requirements. The above-referenced TILA violations therefore also constitute MVRISA violations.

66.     In addition, Plaintiff was not provided a contract identified as a "Retail Installment Contract," in accordance with MVRISA § 302, at the time of the sale or at any time reasonably thereafter. They had to request it repeatedly.

67.     Under MVRISA § 302(1) a motor vehicle retail installment contract is required to contain "all of the agreements" between the parties.

68.     As set forth above, no document received by Plaintiffs contained all of the agreements between the parties.

69.     The Dealership's violations of MVRISA were willful, as evidenced at least by its provision of an inaccurate RIC to Plaintiff in a sealed envelope and then refusing to correct it on Plaintiffs' request.

70.     For all of the reasons stated herein, under MVRISA § 307, Plaintiff is permitted to recover from the Dealership any credit service charge, delinquency, or collection charge he has paid as a result of this transaction.

71.     Plaintiff is also entitled to injunctive relief barring the Dealership from henceforth violating MVRISA as set forth above.

72.     By extension, JP Morgan Chase is liable for these same violations, as the eventual holder of the finance agreement the Dealership entered into without Plaintiff's consent.

### THIRD CAUSE OF ACTION
### Violations of N.Y. GEN. BUS. LAW § 349(h) (Deceptive Practices)

73.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

74.     Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

75.     To wit, wholly apart from any other violations of law recounted in this Complaint, the Dealership's acts and practices on behalf of themselves constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

76.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

77.     Each of these actions was consumer-oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

78.     These false and deceptive consumer-oriented actions misrepresent the actual rights and obligations of consumers.

79.     Specifically, discovery will show the Dealership routinely misrepresents the cost of automobiles for sale or lease, inducing customers to commit to purchase an automobile at a

price that is later inflated through the sale of illusory warranties, phantom fees, and other charges, all of which hide the true cost of an automobile from members of the public, the deceptive practices set forth herein constitute a class bait and switch scheme perpetrated on the public.

80.     Discovery will further show that the Dealership routinely uses the digital signature process to hide the full cost of financed transactions from consumers.

81.     These false and deceptive consumer-oriented actions and representations serve to convince consumers that they will be able to purchase or lease an automobile at a certain price, only to have that price drastically inflated after committing to purchase or lease the vehicle based on the Dealership's false representations.

82.     These false and deceptive consumer-oriented actions and representations serve to convince consumers that they will be able to purchase or lease an automobile at a certain price, only to have that price drastically inflated after committing to purchase or lease the vehicle based on the Dealership's false representations.

83.     Discovery will also confirm that the Dealership routinely misrepresents that its sales of automobiles are in compliance with applicable law, causing consumers to enter into transactions falsely believing that they have received all necessary disclosures and notices.

84.     In actuality, as set forth in this Complaint, the Dealership's standard form contracts and other documents do not comply with New York law and do not contain the consumer notices and disclosures required by, among other things, MVRISA.

85.     The Dealership's false and deceptive consumer-oriented actions result in Defendants receiving and retaining payments as the result of transactions into which consumers, and Plaintiff specifically, would not have entered if the true facts had been known.

86.     The Dealership's conduct and statements described above are materially misleading.

87.     As a result of these violations of NYGBL § 349, Plaintiff suffered and continues to suffer pecuniary and non-pecuniary harm.

88.     The Dealership's violations were willful and knowing and committed in bad faith.

89.     For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000, punitive damages, costs and reasonable attorneys' fees pursuant to NYGBL §349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

90.     By extension, JP Morgan Chase is liable for these same violations, as the eventual holder of the finance agreement Baron Cohen entered into without Plaintiff's consent.

### FOURTH CAUSE OF ACTION
### Violations of N.Y. GEN. BUS. LAW § 350 (False Advertising)

91.     Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

92.     Under NYGBL § 350, "false advertising" means:

[A]dvertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

93.     The Dealership's oral and written representations of the Vehicle's price, the costs and fees included within the ultimate price of the vehicle, and the contents of the loan agreement and RIC were materially misleading and constitute false advertising pursuant to NYGBL § 350.

94. The Dealership's false advertising was done knowingly and willfully and was committed in bad faith.

95. As a result of these violations of NYGBL § 350, Plaintiff – who would not have purchased the Vehicle but for the Dealership's false advertising – suffered actual damages as set forth herein.

96. For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), actual damages as set forth herein, three times the actual damages up to $10,000, punitive damages, and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### Common Law Fraud

97. Plaintiff repeats and realleges the allegations contained in the above paragraphs and incorporates them with the same force and effect as if set forth specifically herein.

98. As set forth above, the Dealership defrauded Plaintiff by, *inter alia*, overcharging Plaintiff for the Vehicle, adding a service plan to the transaction without Plaintiff's consent, and by having Plaintiffs sign an electronic tablet and affixing their signatures to a fraudulent contract Plaintiffs never had an opportunity to review.

99. Discovery will show the Dealership intended to deceive Plaintiff.

100. Plaintiff believed and justifiably relied upon the Dealership's representations. Plaintiff had no reason to know or expect that the documents to which his signature was affixed listed the grossly overinflated and incorrect Vehicle purchase price, loan amount, and service plan.

101. Had Defendant been truthful about the transaction's sales terms and the contents of the loan agreement, and had the Dealership not made these fraudulent misrepresentations, Plaintiff would have walked away and avoided the transaction entirely.

102.    As a result of such reliance, Plaintiff sustained actual damages (including both pecuniary and non-pecuniary damages).

103.    Moreover, the Dealership's conduct was egregious on every level, involving outright deception.

104.    As a result of Plaintiffs' reasonable reliance upon Baron Cohen's misrepresentations, Plaintiffs are entitled to actual damages as set forth above, punitive damages, and costs.

### SIXTH CAUSE OF ACTION
### Rescission / Declaration of No Liability for Lease

105.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

106.    As set forth above, the RIC is forged.

107.    As also set forth above, Plaintiff would not have signed the RIC but for the Dealership's fraudulent conduct.

108.    The Dealership's misconduct was material and willful.

109.    Damages will not afford Plaintiff a complete and adequate remedy and the status quo may be substantially restored by equitable relief.

110.    Plaintiff is entitled to rescind their contract to lease the Vehicle and all related contracts and services.

111.    As a result of these violations, Plaintiff is entitled to rescission of the RIC, restitution of all monies paid thereunder, and costs and expenses, as well as a declaration that Plaintiff is not liable under the lease, including *inter alia*, for any purported termination fee.

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendants:

(a) awarding Plaintiff statutory damages and civil penalties, actual damages, consequential damages, total damages, punitive damages, costs and expenses, and reasonable attorneys' fees;

(b) rescission/cancellation of the transaction;

(c) declaratory judgment; and

(d) such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: December 9, 2021

Respectfully Submitted,

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group, LLP
80 Broad Street, Suite 1301
New York, New York 10004
T:  212.500.6114
F:  646.612.7996
dschlanger@consumerprotection.net

Craig C. Marchiando
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23188
(757) 930-3660
(757) 930-3662 fax
craig@clalegal.com

*Attorneys for Plaintiff*